Larry ROCCAFORTE, Petitioner,

v.

Jefferson COUNTY, Respondent.

No. 09–0326.

Supreme Court of Texas.

Argued Oct. 14, 2010.

Decided April 29, 2011.

Laurence W. Watts, Watts & Associates, P.C., Missouri City, TX, Brandon David Mosley, Cowan & Lemmon, LLP, Houston, TX, for Larry Roccaforte.

Thomas F. Rugg, District Attorney's Office, First Assistant—Civil Div., Steven L. Wiggins, Jefferson County District Attorney Office, Thomas E. Maness, Criminal District Attorney, Beaumont, TX, for Jefferson County.

Todd K. Sellars, Dallas County Assistant Attorney, Dallas, TX, for Amicus Curiae Dallas County, Texas.

Chief Justice JEFFERSON delivered the opinion of the Court, joined by Justice HECHT, Justice WAINWRIGHT, Justice MEDINA, Justice GREEN, Justice JOHNSON, Justice GUZMAN, and Justice LEHRMANN, and joined by Justice WILLETT as to parts I through III.

The Local Government Code requires a person suing a county to give the county judge and the county or district attorney notice of the claim. Tex. Loc. Gov't Code § 89.0041. The plaintiff provided that notice here, but did so by personal service of process, rather than registered or certified mail as the statute contemplates. We conclude that when the requisite county officials receive timely notice enabling them to answer and defend the claim, the case should not be dismissed. Because the court of appeals concluded otherwise, we reverse its judgment and remand the case to the trial court for further proceedings.

## I. Background

Former Chief Deputy Constable Larry Roccaforte sued Jefferson County and Constable Jeff Greenway, alleging that his wrongful termination deprived him of rights guaranteed by the Texas Constitution. Roccaforte personally served County Judge Carl Griffith with the suit, and fifteen days later, the County (represented by the district attorney) and Constable Greenway answered, denying liability. The County propounded written discovery requests, deposed Roccaforte, and presented County officials for depositions. The County also filed a plea to the jurisdiction, asserting that Roccaforte did not give requisite notice of the suit. *See* Tex. Loc. Gov't Code § 89.0041. Roccaforte disagreed, arguing that the statute applied only to contract claims. Alternatively, he argued that 42 U.S.C. § 1983 preempted the notice requirements and that he substantially complied with them in any event.

Although the trial court indicated that it would sustain the County's plea and sever those claims from the underlying case, it did not immediately sign an order doing so. In the meantime, Roccaforte tried his claims against Greenway. A jury returned a verdict in Roccaforte's favor. Afterwards, the trial court signed an order granting the County's jurisdictional plea. The order did not sever the claims from the underlying case. Roccaforte then pursued this interlocutory appeal. His notice of appeal stated that "[p]ursuant to Civ. P. Rem.Code § 51.014(b), all proceedings are

stayed in the trial court pending resolution of the appeal." But the proceedings were not stayed.

In the underlying case, Greenway moved for judgment notwithstanding the verdict, which the trial court granted as to Roccaforte's property interest and First Amendment retaliation claims but denied as to Roccaforte's claimed violation of his liberty interest. Roccaforte moved for entry of judgment. Notwithstanding the statutory stay referenced in Roccaforte's notice of appeal, the trial court rendered judgment for Roccaforte and awarded damages, attorney's fees, and costs. The judgment was titled "FINAL JUDGMENT"; it "denie[d] all relief no [sic] granted in this judgment"; and it stated "[t]his is a FINAL JUDGMENT." The County was included in the case caption. No one objected to the continuation of trial court proceedings despite the statutory stay.

Greenway appealed, and Roccaforte cross-appealed, raising as his only issues complaints regarding the trial court's JNOV on his claims against Greenway. The court of appeals affirmed in part and reversed in part, rendering judgment that Roccaforte take nothing. *Greenway v. Roccaforte*, 2009 WL 3460683, at *6, 2009 Tex.App. LEXIS 8290, at *15 (Tex.App.-Beaumont 2009, pet. denied).[1]

In Roccaforte's separate interlocutory appeal, the court of appeals made the following notation:

> Roccaforte notes that immediately after the dismissal order, the trial of the case proceeded to judgment without the County as a party. No one disputes that all the claims against all other par-

ties have been resolved. The order of dismissal is therefore appealable whether or not the statute at issue is jurisdictional.

281 S.W.3d 230, 231 n. 1. The court ultimately concluded that Roccaforte's failure to notify the County of the suit by registered or certified mail mandated dismissal of his suit against the County, but not because the trial court lacked jurisdiction. *Id.* at 236–37. Accordingly, the court modified the dismissal order to reflect that dismissal was without prejudice and affirmed the order as modified. *Id.*

Roccaforte petitioned this Court for review, which we granted.[2] 53 Tex.Sup.Ct.J. 1061 (Aug. 27, 2010).

## II. Did the trial court's final judgment moot this interlocutory appeal?

Before turning to the merits, we must decide a procedural matter: What happens when a party perfects an appeal of an interlocutory judgment that has not been severed from the underlying action, and that action proceeds to trial and a final judgment? The trial court did not sever Roccaforte's claims against the County[3] and denied "all relief not granted" in its final judgment. Ordinarily, under these circumstances, Roccaforte would have to complain on appeal that the trial court erroneously dismissed those claims. Roccaforte, however, did not complain about the County's dismissal in his appeal from the final judgment. His separate interlocutory appeal, then, rests on a precipice of mootness.

---

1. Today, we deny that petition for review.

2. Dallas County submitted an amicus curiae brief in support of Jefferson County.

3. "As a rule, the severance of an interlocutory judgment into a separate cause makes it final." *Diversified Fin. Sys., Inc. v. Hill, Heard, O'Neal, Gilstrap & Goetz, P.C.*, 63 S.W.3d 795, 795 (Tex.2001) (per curiam).

## A. Roccaforte waived any complaint about the trial court's actions during the statutory stay.

Although Roccaforte's interlocutory appeal was supposed to stay all proceedings in the trial court pending resolution of the appeal,[4] Roccaforte did not object to the trial court's rendition of judgment while the stay was in effect. To the contrary, he affirmatively moved for entry of judgment. Because a final judgment frequently moots an interlocutory appeal,[5] we must decide whether the trial court's failure to observe the stay made the final judgment void or merely voidable. If the final judgment is void, it would have no impact on this interlocutory appeal. *Lindsay v. Jaffray*, 55 Tex. 626 (Tex.1881) ("A void judgment is in legal effect no judgment.") (quoting FREEMAN ON JUDGMENTS, § 117).[6] If voidable, then we must decide whether it moots this proceeding. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex.2010) (observing that voidable orders must be corrected by direct attack and, unless successfully attacked, become final). We conclude it is voidable.

Two of our courts of appeals have held that the failure to object when a trial court proceeds despite the automatic stay waives any error the trial court may have committed by failing to impose it. *See Escalante v. Rowan*, 251 S.W.3d 720, 724–25 (Tex. App.-Houston [14th Dist.] 2008), *rev'd on other grounds*, 332 S.W.3d 365 (Tex.2011)

(per curiam); *Henry v. Flintrock Feeders, Ltd.*, No. 07–04–0224–CV, 2005 WL 1320121, at *1, 2005 Tex.App. LEXIS 4310, at *1 (Tex.App.-Amarillo June 1, 2005, no pet.) (mem.op.). In *Escalante*, the court of appeals held that a party's failure to object to a trial court's ruling on summary judgment motions during the statutory stay "failed to preserve error as to any objection that the summary judgment is voidable based on the stay." *Escalante*, 251 S.W.3d at 725. In *Henry*, the court held that a party's failure to object to the trial court's action in violation of the stay waived any error resulting from that action. *Henry*, 2005 WL 1320121, at *1–2, 2005 Tex.App. LEXIS 4310, at *4 (holding that trial court's grant of summary judgment mooted interlocutory appeal challenging denial of special appearance). We find particularly instructive a case involving a trial court's rendition of final judgment while an interlocutory appeal of a class certification order was pending:

[I]f a trial court proceeds to trial during the interlocutory appeal, the class action plaintiff must inform the court of section 51.014(b) and request that the stay be enforced. If a court proceeds to trial over the objection of a class action plaintiff, the class action plaintiff could request a mandamus and this court would grant it. However, if the class action plaintiff fails to inform the trial court of section 51.014(b), and allows the court to proceed to trial, as happened here, the

4. TEX. CIV. PRAC. & REM.CODE § 51.014(b); *see also* TEX.R.APP. P. 29.5 (providing that "[w]hile an appeal from an interlocutory order is pending, the trial court retains jurisdiction of the case and *unless prohibited by statute* may make further orders, including one dissolving the order complained of on appeal") (emphasis added).

5. *See, e.g., Hernandez v. Ebrom*, 289 S.W.3d 316, 319 (Tex.2009) ("Appeals of some interlocutory orders become moot because the or-

ders have been rendered moot by subsequent orders.").

6. *See also Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex.2010) (noting that "[a] judgment is void ... when it is apparent that the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act") (quoting *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex.2005)).

plaintiff waives the right to object or request any relief on appeal. *See* Tex. R.App. P. 33.1(a). We see this as no different from any other trial court error that is not preserved—it is waived. *Siebenmorgen v. Hertz Corp.*, No. 14–97–01012–CV, 1999 WL 21299, at *3, 1999 Tex.App. LEXIS 311, at *10–11 (Tex.App.-Houston [14th Dist.] Jan. 21, 1999, no pet.) (dismissing as moot interlocutory appeal of order denying class certification).

A third court of appeals has implicitly concluded that parties can waive the right to insist on a section 51.014(b) stay. *See Lincoln Property Co. v. Kondos*, 110 S.W.3d 712, 715 (Tex.App.-Dallas 2003, no pet.). In that case, the court observed that the trial court's grant of summary judgment while an interlocutory appeal was pending violated the statutory stay. Noting that "neither party requested a stay from this Court" and "both parties sought to commence the 'trial' below by filing and/or arguing motions for summary judgment while this appeal was pending," the court of appeals did not conclude that the trial court's summary judgment was void. *Id.* at 715. Instead, the appellate court held that the summary judgment mooted the interlocutory appeal. *Id.* at 715–16 (noting that the interlocutory class certification order merged into the final judgment). The court concluded: "By rendering a final judgment during this appeal, the trial court also rendered itself powerless to reconsider its class certification ruling were we to conclude here the ruling was entered in error." *Id.* at 715.

We agree with those decisions that have held that a party may waive complaints about a trial court's actions in violation of the stay imposed by section 51.014(b). That stay differs from a situation in which the relevant statute vests "exclusive jurisdiction" in a particular forum. *See, e.g., Kalb v. Feuerstein*, 308 U.S. 433, 439, 60 S.Ct. 343, 84 L.Ed. 370 (1940) (noting that bankruptcy law in effect at the time "vested in the bankruptcy courts exclusive jurisdiction" and "withdr[ew] from all other courts all power under any circumstances"). For that reason, we have held that actions taken in violation of a bankruptcy stay are void, not just voidable. *Cont'l Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex.1988).[7]

■ But as we have noted, "a court's action contrary to a statute or statutory equivalent means the action is erroneous or 'voidable,' not that the ordinary appellate or other direct procedures to correct it may be circumvented." *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex.1990); *cf. Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 359 (Tex.2004) (noting that failure to comply with a nonjurisdictional statutory requirement may result in the loss of a claim, but that failure must be timely asserted and compliance can be waived). That is the case here. The trial court's rendition of final judgment while the stay was in effect was voidable, not void, and Roccaforte's failure to object to the trial court's actions waived any error related to the stay. We must, therefore, confront the fact that the trial

---

7. *But see Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir.1989) (holding that, under the 1978 Bankruptcy Act, "the better reasoned rule characterizes acts taken in violation of the automatic stay as voidable rather than void"); *see also Chisholm v. Chisholm*, No. 04–06–00504–CV, 2007 WL 1481574, at *2–3, 2007 Tex.App. LEXIS 3936, at *6–7 (Tex.App.-San Antonio May 23, 2007, no pet.) (noting conflict between *Sikes* and *Continental Casing*); *In re De La Garza*, 159 S.W.3d 119, 120–21 (Tex.App.-Corpus Christi 2004, no pet.) (same); *Oles v. Curl*, 65 S.W.3d 129, 131 n. 1 (Tex.App.-Amarillo 2001, no pet.)(same); *Chunn v. Chunn*, 929 S.W.2d 490, 493 (Tex.App.-Houston [1st Dist.] 1996, no pet.) (same).

court signed a final judgment disposing of all parties and all claims and that Roccaforte did not present in his appeal from that judgment the arguments he advances in this interlocutory appeal.

**B. The trial court's final judgment implicitly modified its interlocutory order, and we treat this appeal as relating to that final judgment.**

■ We have repeatedly held that the right of appeal should not be lost due to procedural technicalities.[8] Roccaforte timely perfected appeals from both the interlocutory order and the final judgment, and this is not a situation in which further proceedings mooted the issues raised in Roccaforte's interlocutory appeal.[9]

■ Our procedural rules provide that: After an order or judgment in a civil case has been appealed, if the trial court modifies the order or judgment, or if the trial court vacates the order or judgment and replaces it with another appealable order or judgment, the appel-

late court must treat the appeal as from the subsequent order or judgment and may treat actions relating to the appeal of the first order or judgment as relating to the appeal of the subsequent order or judgment. The subsequent order or judgment and actions relating to it may be included in the original or supplemental record. Any party may nonetheless appeal from the subsequent order or judgment.

TEX.R.APP. P. 27.3. Here, although the trial court's final judgment did not expressly modify its interlocutory order, it did so implicitly. Because the claims against the County had not been severed, the County remained a party to the underlying proceeding despite the interlocutory appeal. The final judgment necessarily replaced the interlocutory order, which merged into the judgment,[10] even though Roccaforte's interlocutory appeal remained pending. Under our rules, however, we may treat this interlocutory appeal as an

---

8. *See, e.g., Guest v. Dixon,* 195 S.W.3d 687, 688 (Tex.2006) ("[W]e have repeatedly stressed that procedural rules should be construed and applied so that the right of appeal is not unnecessarily lost to technicalities."); *Crown Life Ins. Co. v. Estate of Gonzalez,* 820 S.W.2d 121, 121–22 (Tex.1991) (per curiam)(stating that procedural rules should be "liberally construed so that the decisions of the courts of appeals turn on substance rather than procedural technicality").

9. *See, e.g., Isuani v. Manske–Sheffield Radiology Grp., P.A.,* 802 S.W.2d 235, 236 (Tex.1991) (holding that final judgment mooted interlocutory appeal of order granting or denying temporary injunction); *Providian Bancorp Servs. v. Hernandez,* No. 08–04–00186–CV, 2005 WL 82197, at *1, 2005 Tex.App. LEXIS 288, at *2 (Tex.App.-El Paso Jan. 13, 2005, no pet.) (mem.op.)(dismissing as moot interlocutory appeal from order denying motion to compel arbitration, because trial court entered an order compelling arbitration); *Mobil Oil Corp. v. First State Bank of Denton,* No. 2–02–119–CV, 2004 WL 1699928, at *1, 2004

Tex.App. LEXIS 6940, at *2 (Tex.App.-Fort Worth July 29, 2004, no pet.) (dismissing as moot interlocutory appeal from class certification order, because trial court subsequently vacated order, decertified class, and dismissed class action); *Lincoln Property Co. v. Kondos,* 110 S.W.3d 712, 715–16 (Tex.App.-Dallas 2003, no pet.) (dismissing as moot interlocutory appeal of order granting class certification, as trial court subsequently granted summary judgment motion); *see also Hernandez,* 289 S.W.3d at 321 (acknowledging that a party may not, after trial and an unfavorable judgment, prevail on a complaint that the party's summary judgment motion should have been granted, nor could a party complain of a failure to dismiss a health care liability claim based on an inadequate expert report, after a full trial and evidence establishing the elements of that claim).

10. *See Webb v. Jorns,* 488 S.W.2d 407, 408–09 (Tex.1972) (holding that interlocutory judgment merged into final judgment, which was then appealable).

appeal from the final judgment. That permits us to reach the merits of Roccaforte's claims rather than dismiss the interlocutory appeal as moot.

Although not relying on rule 27.3, the court of appeals took a similar approach, treating Roccaforte's appeal as though it were from the final judgment. 281 S.W.3d at 231 n. 1. Similarly, we treat Roccaforte's appellate complaints about the trial court's grant of the County's jurisdictional plea as though they related to the appeal of the final judgment. We turn now to the merits of his claim.

### III. The post-suit notice requirements are not jurisdictional.

Local Government Code section 89.0041 provides:

(a) A person filing suit against a county or against a county official in the official's capacity as a county official shall deliver written notice to:

(1) the county judge; and

(2) the county or district attorney having jurisdiction to defend the county in a civil suit.

(b) The written notice must be delivered by certified or registered mail by the 30th business day after suit is filed and contain:

(1) the style and cause number of the suit;

(2) the court in which the suit was filed;

(3) the date on which the suit was filed; and

(4) the name of the person filing suit.

(c) If a person does not give notice as required by this section, the court in which the suit is pending shall dismiss the suit on a motion for dismissal made by the county or the county official.

TEX. LOC. GOV'T CODE § 89.0041. In 2005, the Legislature amended the Government Code to provide that "[s]tatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." TEX. GOV'T CODE § 311.034.

The County contends section 311.034 makes Roccaforte's failure to comply with section 89.0041's notice requirements jurisdictional—an issue we have never decided. Our courts of appeals, however, have concluded that the notice requirements are not jurisdictional, even in light of section 311.034. *See El Paso Cnty. v. Alvarado,* 290 S.W.3d 895, 898–99 (Tex.App.-El Paso 2009, no pet.) (holding that section 89.0041 is not jurisdictional because section 311.034 applies only to prerequisites to file suit, not post-suit notice requirements); *Ballesteros v. Nueces Cnty.,* 286 S.W.3d 566, 570 (Tex.App.-Corpus Christi 2009, pet. denied) (same); 281 S.W.3d 230, 232–33 (same); *Dallas Cnty. v. Coskey,* 247 S.W.3d 753, 754–56 (Tex.App.-Dallas 2008, pet. denied) (same); *Dallas Cnty. v. Autry,* 251 S.W.3d 155, 158 (Tex.App.-Dallas 2008, pet. denied) (same); *Cnty. of Bexar v. Bruton,* 256 S.W.3d 345, 348–49 (Tex.App.-San Antonio 2008, no pet.) (same).

■ We presume "that the Legislature did not intend to make the [provision] jurisdictional[,] a presumption overcome only by clear legislative intent to the contrary." *City of DeSoto v. White,* 288 S.W.3d 389, 394 (Tex.2009). The statutes' language reflects no such intent here. Section 311.034 applies to *prerequisites* to suit, not notice requirements that can be satisfied only *after* suit is filed. *Compare* TEX. GOV'T CODE § 311.034, *with* TEX. LOC. GOV'T CODE § 89.0041 (requiring notice of cause number, court in which case is filed, and date of filing). Nor does Local Government Code section 89.0041 show such intent: that section states that a trial court may

dismiss a case for noncompliance only after the governmental entity has moved for dismissal. TEX. LOC. GOV'T CODE 89.0041(c) ("If a person does not give notice as required by this section, the court in which the suit is pending shall dismiss the suit on a motion for dismissal made by the county or the county official."). The motion requirement means that a case may proceed against those governmental entities that do not seek dismissal—in other words, that a county can waive a party's noncompliance. This confirms that compliance with the notice requirements is not jurisdictional. *See Loutzenhiser*, 140 S.W.3d at 359 ("The failure of a non-jurisdictional requirement mandated by statute may result in the loss of a claim, but that failure must be timely asserted and compliance can be waived."). We find no basis upon which to conclude that the Legislature intended section 89.0041 to be jurisdictional.

**IV. Where the appropriate county officials receive timely notice of the suit, the case should not be dismissed if notice was provided by some means other than mail.**

Roccaforte provided timely notice of every item required by section 89.0041, and the requisite officials received that notice. Did the Legislature intend to bar Roccaforte's claim, merely because that notice was hand-delivered rather than mailed?

Roccaforte argues that the County's actual notice of the suit and his substantial compliance with section 89.0041 should suffice. A number of courts of appeals (though not the court of appeals in this case) agree with him.[11] The County disagrees, arguing that the statute requires strict compliance with its terms, and dismissal is mandated if those terms are not satisfied.

Section 89.0041 ensures that the appropriate county officials are made aware of pending suits, allowing the county to answer and defend the case. *See Howlett*, 301 S.W.3d at 846 ("The apparent purpose of section 89.0041 is to ensure that the person responsible for answering and defending the suit—the county or district attorney-has actual notice of the suit itself."); *Coskey*, 247 S.W.3d at 757 ("Section 89.0041's notice of suit requirement against a county serves the purpose of aiding in the management and control of the City's finances and property...."). That purpose was served here—the county judge and the district attorney had notice within fifteen days of Roccaforte's filing, and they answered and defended the suit. *Cf. Loutzenhiser*, 140 S.W.3d at 360 (observing that "if in a particular case a governmental unit were not prejudiced by lack of notice and chose to waive it, we do not see how the statutory purpose would thereby be impaired"). The statute was not intended to create a procedural trap allowing a county to obtain dismissal even though the appropriate officials have notice of the suit. *See Southern Surety Co. v. McGuire*, 275 S.W. 845, 847 (Tex.Civ.

---

11. *Compare Howlett v. Tarrant Cnty.*, 301 S.W.3d 840, 847 (Tex.App.-Fort Worth 2009, pet. denied) (holding that substantial compliance with section 89.0041 was sufficient because the purpose of the statute was to ensure notice, and that purpose was accomplished), *Ballesteros v. Nueces Cnty.*, 286 S.W.3d 566, 570 (Tex.App.-Corpus Christi 2009, pet. denied) (same), *Dallas Cnty. v. Coskey*, 247 S.W.3d 753, 757 (Tex.App.-Dallas 2008, pet. denied) (same), *and Dallas Cnty. v. Autry*, 251 S.W.3d 155, 158 (Tex.App.-Dallas 2008, pet. denied) (same), *with* 281 S.W.3d at 237 (holding that "[r]eading a broad actual notice or service exception into the statute—without any attempt by plaintiff to comply—would, in effect, largely eliminate the specified, additional written notice requirement of the statute"). That conflict gives us jurisdiction over this interlocutory appeal. TEX. GOV'T CODE § 22.225(c), (e).

App.-El Paso 1925, writ ref'd) (holding that failure to present written claim to commissioners' court as required by statute did not bar the claim, because "[t]he purpose of the statute was fully accomplished by [oral presentment]"); *see also Coskey*, 247 S.W.3d at 757 ("The manner of delivery specified by the statute assures that county officials will receive notice of a suit after it has been filed to enable it to respond timely and prepare a defense."). Because those officers had the requisite notice, we conclude that the trial court erred in dismissing Roccaforte's claims.

## V. Conclusion

Roccaforte's claims against the County should not have been dismissed for lack of notice.[12] We reverse the court of appeals' judgment as to those claims and remand the case to the trial court for further proceedings. TEX.R.APP. P. 60.2(d).

Justice WILLETT delivered a concurring opinion.

Justice WILLETT, concurring in part.

I join Parts I–III of the Court's opinion. As for Part IV, I join the result but not the reasoning. There is a better approach, one more allegiant to the Legislature's words. Roccaforte's claim should proceed, but the reason is rooted not in his substantial compliance but rather the County's substantial dalliance.

\*        \*        \*

Aristotle would have enjoyed this case, which perfectly illustrates the challenge he recognized of reconciling the "absoluteness" of the written law with equity in the particular case.[1] Believing that "the equitable is superior" and that rigid laws must bend,[2] Aristotle urged "a correction of law where it is defective owing to its universality."[3] From Athens, Greece to Athens, Texas (and beyond), judges still debate the bounds of interpretive discretion—whether it is appropriate to temper the "absoluteness" of statutory mandates and ameliorate their seeming harshness. Millennia may have passed since Aristotle's Lyceum, but this great philosophical and jurisprudential debate endures.

### I

As the Court persuasively explains in Part III, the post-suit notice requirements in Section 89.0041 are not jurisdictional, meaning a County can waive a plaintiff's noncompliance.[4] Here, the County objected to Roccaforte's noncompliance, prompting the Court to ask: "Did the Legislature intend to bar Roccaforte's claim, merely because that notice was hand-delivered rather than mailed?"[5] If phrased that way, our recent and unanimous precedent answers the question "yes," since "the surest guide to legislative intent" is the language lawmakers chose.[6] In other words, "Where text is clear, it is determinative of that intent."[7] The Court today agrees that nothing in Section 89.0041 relieves

---

12. Because this issue is dispositive, we do not reach Roccaforte's argument that 42 U.S.C. § 1983 preempts section 89.0041's notice requirements.

1. Aristotle, Nicomachean Ethics bk. V, ch. 10.

2. *Id.*

3. *Id.*

4. 341 S.W.3d 919, 926 (explaining that compliance with the notice requirements of Section 89.0041 of the Local Government Code "is not jurisdictional") (citation omitted).

5. 341 S.W.3d at 926.

6. *Presidio Indep. Sch. Dist. v. Scott,* 309 S.W.3d 927, 930 (Tex.2010) (citation and quotation marks omitted).

7. *Id.*

Roccaforte from compliance. So, to escape the statute's emphatic "shall dismiss the suit" mandate,[8] the Court pivots on "actual notice" and "substantial compliance" and holds that the statute's purpose was fulfilled via hand-delivery.

Honoring a statute's plain words is indispensable, even if enforcing those words as written works an unpalatable result. To be sure, courts deviate from otherwise-clear textual commands to avert "absurd" results or to vindicate constitutional principles.[9] But as a general matter, if the legal deck is stacked via technical statutory requirements, the Legislature should reshuffle the equities, not us.[10]

As for whether Section 89.0041's use of phrases like "shall deliver,"[11] "must be delivered,"[12] "as required,"[13] and "shall dismiss"[14] mandates strict compliance, I would take the statute at face value. Beyond that, those desiring additional reassurance that lawmakers intended what they enacted can find it in a properly contextual reading of other notice-related statutes.

First, the Legislature, while omitting an actual-notice exception from Section 89.0041, expressly included one in the Tort Claims Act, stating the Act's pre-suit notice requirements "do not apply if the gov-

ernmental unit has actual notice...."[15] The Legislature understands how to let actual notice excuse technical noncompliance; it easily could have said actual notice suffices, thus obviating the need for service via certified or registered mail. Instead, it opted against actual notice, presumably on purpose. For better or worse, lawmakers enacted strict compliance, not substantial compliance. Our interpretive focus, both textual and contextual, must be on the law as written, and we should refuse to engraft what the Legislature has refused to enact.

Second, reading "actual notice" into Section 89.0041's *post*-suit notice requirement robs it of any real meaning and also makes Section 89.004's *pre*-suit notice requirement redundant. Section 89.004 forbids someone from suing a county or county official "unless the person has presented the claim to the commissioners court and the commissioners court neglects or refuses to pay all or part of the claim...."[16] This presentment requirement assures actual notice of a claim before it is filed and was already on the books when Section 89.0041 was added in 2003. Logically then, Section 89.0041 must require something *in addition to* the preexisting notice and presentment requirements.[17]

---

8. *See* TEX. LOC. GOV'T CODE § 89.0041(c).

9. The absurdity doctrine, rightly understood, is a safety valve reserved for truly exceptional cases, not just those where the mandated statutory outcome is thought unwise or inequitable. *See generally* John F. Manning, *The Absurdity Doctrine*, 116 HARV. L.REV. 2387 (2003). As Chief Justice Marshall famously put it, a court's allegiance to the text ceases when applying the text "would be so monstrous that all mankind would, without hesitation, unite in rejecting the application." *Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 203, 4 L.Ed. 529 (1819).

10. The Legislature can, of course, if it wishes, statutorily overturn today's holding that Sec-

tion 89.0041 is nonjurisdictional and subject to an actual-notice exception.

11. TEX. LOC. GOV'T CODE § 89.0041(a).

12. *Id.* § 89.0041(b).

13. *Id.* § 89.0041(c).

14. *Id.*

15. TEX. CIV. PRAC. & REM.CODE § 101.101(c).

16. TEX. LOC. GOV'T CODE § 89.004(a).

17. Another point: As the Court notes, some courts of appeals have concluded that a sub-

The requisite officials here received notice, but they did not receive "requisite notice," as the Court states.[18] The Court may deem it *adequate*, but it is irrefutably not *requisite*. As the Court reads Section 89.0041, it is not only nonjurisdictional (I agree on this point), but also nonmandatory. I acknowledge the statute's no-exceptions mandate works a harsh result,[19] but to the degree this seems a trap for the unwary, it is a trap the Legislature left well marked.

## II

Having said all that, I agree with the Court that Roccaforte ultimately wins his notice dispute, but on different grounds. Instead of asking whether the Legislature meant to bar Roccaforte's claim,

I would rephrase the question in a manner less assaultive to the statutory text: Did the County effectively *waive* Roccaforte's noncompliance by not timely asserting it? I believe so.[20]

---

stantial-compliance exception lies hidden within Section 89.0041, notwithstanding the statute's emphatic "shall dismiss" mandate. 341 S.W.3d at 928 (citing *Howlett v. Tarrant Cnty.*, 301 S.W.3d 840, 847 (Tex.App.-Fort Worth 2009, pet. denied) (holding that substantial compliance with Section 89.0041 was sufficient because the purpose of the statute was to ensure notice, and that purpose was accomplished); *Ballesteros v. Nueces Cnty.*, 286 S.W.3d 566, 570 (Tex.App.-Corpus Christi 2009, pet. denied) (same); *Dallas Cnty. v. Coskey*, 247 S.W.3d 753, 757 (Tex.App.-Dallas 2008, pet. denied) (same); *Dallas Cnty. v. Autry*, 251 S.W.3d 155, 158 (Tex.App.-Dallas 2008, pet. denied) (same)). Two of the three courts of appeals even cite as support two of our decisions involving notice in other contexts. *Coskey*, 247 S.W.3d at 757 ("Both *Artco–Bell Corp.* and *Cox Enterprises, Inc.*. support a standard of substantial compliance with notice requirements under certain circumstances, and we conclude that standard applies in these circumstances.") (citations omitted); *Ballesteros*, 286 S.W.3d at 571–72. A third court of appeals opinion in turn relies upon *Coskey*. *See Autry*, 251 S.W.3d at 158.

Closer analysis reveals *Coskey* and *Ballesteros* offer feeble support, as they misinterpret this Court's holdings in *Cox Enters., Inc. v. Bd. of Trs. of Austin Indep. Sch. Dist.*, 706 S.W.2d 956 (Tex.1986), and *Artco–Bell Corp. v. City of Temple*, 616 S.W.2d 190 (Tex.1981). The issue in *Cox* involved *how much* particularity was required in notice. 706 S.W.2d at 960 (noting that "less than full disclosure is not substantial compliance" and that "the Open Meetings Act requires a full disclosure of the subject matter of the meetings"). *Artco–Bell* is likewise inapposite. In *Artco–Bell*, the Court simply invalidated the notice requirement in a city's charter and held the

plaintiff had provided sufficient notice. 616 S.W.2d at 193–94 ("[W]e hold that the requirement of verification represents an unreasonable limitation on the City's liability and is invalid as it is contrary to the limitation of authority placed upon home rule cities....") (footnote omitted).

*Cox* was about the specificity of notice; *Artco–Bell* resulted in the invalidation of notice. In neither case did the Court craft an *exception* for notice. The lower courts' treatment of these cases was thus strained, and should not be taken as a correct reading of our jurisprudence on statutory notice requirements.

18.   341 S.W.3d at 927.

19.   Had the County "timely asserted" Roccaforte's noncompliance, dismissal would have been mandatory under the statute's rigid, no-discretion mandate, thus raising the question of whether Section 89.0041's notice regime is preempted by 42 U.S.C. § 1983. *See Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 359 (Tex.2004) ("The failure of a nonjurisdictional requirement mandated by statute may result in the loss of a claim, but that failure must be timely asserted and compliance can be waived."). That question, while interesting legally, is not before us.

20.   Waiver may actually be the wrong term; it may be more accurate to call this forfeiture. As the United States Supreme Court explains: "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the *timely assertion* of a right, waiver is the intentional relinquishment of a known right." *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (emphasis add-

True, the County, after waiting for limitations to expire, filed a motion for dismissal complaining that Roccaforte provided notice via personal service rather than registered or certified mail. I believe that obscures the key point, which on these facts is not *whether* the County sought dismissal, but *when*. A governmental body can raise a jurisdictional bar like immunity from suit whenever it pleases because "the trial court does not have—and never had—power to decide the case,"[21] thus making judgments forever vulnerable to delayed attack. Not so with nonjurisdictional requirements like this, which are waived if not timely raised. Under our precedent, dismissal delayed is sometimes dismissal denied: "The failure of a non-jurisdictional requirement mandated by statute may result in the loss of a claim, but *that failure must be timely asserted* and compliance can be waived."[22] Moreover, "if a governmental unit is to avoid litigation to which it should not be subjected because of lack of notice, it should raise the issue as soon as possible."[23] On these facts, there was no timely assertion, much less one made "as soon as possible."[24]

We have held that waiver is decided on a case-by-case basis, meaning courts look to the totality of the circumstances.[25] Here,

ed) (citations and quotation marks omitted). In any event, under our definition:

> "[W]aiver" is the intentional relinquishment of a right actually or constructively known, or intentional conduct inconsistent with claiming that right. The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual or constructive knowledge of its existence; and (3) the party's actual intent to relinquish the right or intentional conduct inconsistent with the right.

*Perry Homes v. Cull*, 258 S.W.3d 580, 602–03 (Tex.2008) (citations omitted).

**21.** *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 306 (Tex.2010) (citation omitted).

**22.** *Loutzenhiser*, 140 S.W.3d at 359 (emphasis added).

**23.** *Id.* at 360. "Moreover, if in a particular case a governmental unit were not prejudiced by lack of notice and chose to waive it, we do not see how the statutory purpose would thereby be impaired." *Id.*

**24.** Reading Section 89.0041 in tandem with our settled precedent distinguishing mandatory requirements (waivable) from jurisdictional ones (nonwaivable) is consistent with a textualist approach that integrates established interpretive norms. For example, even the most ardent textualist would read a statute of limitations in light of the common-law rules of equitable tolling. *See Young v. United States*, 535 U.S. 43, 49, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002) ("It is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute.") (citations and quotation marks omitted); *see also United States v. Beggerly*, 524 U.S. 38, 48, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998). As Justice Scalia noted in *Young*, a limitations period is subject to the principles of equitable tolling, so long as the statutory text does not preclude such tolling. 535 U.S. at 47, 122 S.Ct. 1036. Same here, where the Legislature drafts notice requirements in light of our decisions differentiating between mandatory and jurisdictional provisions and the consequences that flow from each characterization.

**25.** *See Perry Homes*, 258 S.W.3d at 589–91 (explaining that a party waives an arbitration clause by engaging in substantial litigation to the other party's detriment or prejudice).

In *Jernigan v. Langley*, the Court considered whether a defendant physician waived his statutory right to contest the adequacy of the plaintiff's expert reports by waiting too long. 111 S.W.3d 153, 153 (Tex.2003). The Court held that delay does not always result in waiver, but it does when the defendant's silence or inaction for such a long period shows an intent to yield a known right. *Id.* at 157. I would hold that the County's actions are inconsistent with the intent to assert its statutory right to up-front dismissal based on defective notice. Moreover, *Jernigan* predates our 2004 decision in *Loutzenhiser*, which speaks specifically to statutorily mandated notice re-

the County sought dismissal based on imperfect notice more than two years after suit was filed; more than two years after the County filed its answer; more than two years after the County filed its special exceptions; after the County presented three County officials for deposition and defended those depositions; after the County sent written discovery requests; after the County deposed Roccaforte; and after the County filed a motion for continuance. If two-plus years qualifies as "timely asserted" or "as soon as possible"—at least in the context of a statutory notice requirement commanding action—then these phrases have been drained of all meaning.[26] Indeed, the only thing the County "timely asserted" was limitations. I would disallow the County's belated insistence on dismissal given its decision to defend the case for so long, asserting noncompliance only after seizing tactical advantage via limitations, and thus materially prejudicing Roccaforte. There is no countervailing prejudice in allowing Roccaforte's suit to proceed against the County, which can hardly argue at this late stage

that imperfect notice has harmed its legal position (unlike its fiscal position, having underwritten years of legal and judicial expenses). On these facts, two-plus years of litigation activity to run out the limitations clock betrays the County's too-little, too-late request for dismissal and constitutes waiver.

\* \* \*

The Court's understandable desire to work an eminently fair result has led it to revise the statute as desired rather than read it as enacted. I favor a different approach to the same outcome. Roccaforte should win not because the Court waived the Legislature's words but because the County did.

---

quirements involving governmental units and says notice-based objections should be asserted "as soon as possible." 140 S.W.3d at 360.

**26.** It is true that defendants may assert defenses like limitations in the trial court even following extensive discovery and other pretrial activity. See Tex.R. Civ. P. 94 (affirmative defenses including limitations must be pleaded); Tex.R. Civ. P. 63 (pleadings may be amended without leave of court until seven days before trial). Today's case, though, involves a statutory notice requirement that mandates action within a prescribed time, something *Loutzenhiser* held should be raised "as soon as possible" since the statutory purpose is to avoid litigation altogether. 140 S.W.3d at 360.

Section 89.0041 may not be a prerequisite to bringing suit, but it is a postrequisite to maintaining suit. In my view, Section 89.0041, unlike the Tort Claims Act, does not allow actual notice to forgive defective notice,

but that does not mean actual notice may not affect the *waiver* inquiry of whether a defendant "timely asserted" noncompliance. For reasons stated above, I believe a county that quickly asserts statutory noncompliance, even if it has actual notice, is entitled to dismissal under Section 89.0041. But a county with actual notice that untimely asserts noncompliance (here only after limitations had run two-plus years later) has waived its objection and is not entitled to dismissal. See *City of DeSoto v. White*, 288 S.W.3d 389, 400–01 (Tex.2009) (noting that a party that declines to act in light of "full knowledge" of a defect in a nonjurisdictional notice requirement generally waives any complaint). Any other result would incentivize counties to sit on their rights rather than assert them immediately. Here, the County would be rewarded for wasting over two-years' worth of judicial resources and taxpayer dollars in defending a suit it could have easily dismissed from the outset.